McNAUGHTON, Respondent, vs. McCLURE, Executor, Appellant.

SAME, Appellant, vs. SAME, Respondent.

*April 5—April 29, 1919.*

*Executors and administrators: Claims against estate: Evidence: Materiality: Pleading: Amendment to conform to proof: Trial: Special verdict: Questions to be submitted: Appeal: Harmless error: Wills: Construction: Contract to devise: Legacy to creditor.*

1. In an action for personal services rendered a deceased, testimony of plaintiff that before she began her services with deceased her health was as near perfect as could be, and that at deceased's death she considered herself not only a physical but a mental wreck, was not competent and should not have been admitted.

2. Error in permitting claimant to so testify was not prejudicial, where she recovered upon an express contract.

3. In an action for $8,000 for services against the estate of a deceased person under an alleged contract, where both parties were somewhat in the dark as to what they could prove, the court did not abuse its discretion in allowing claimant to amend to show that the amount due to her was $9,605.52, to conform to the evidence.

4. Where the parties attempted to prove different forms of contract, a question embodying the contract as claimed by defendant, as well as one embodying the contract claimed by the other side, should have been included in the special verdict.

5. In such a case it was not prejudicial error to refuse to submit a question as to whether the parties had entered into such a contract as defendant attempted to prove, where the court instructed, "If you are satisfied to a reasonable certainty," etc., "that the agreement referred to in the second question [the agreement set up by plaintiff] was entered into and made by and between," etc., "you will answer the question 'Yes,' and if you are not so satisfied your answer will be 'No;'" an affirmative answer negativing any other contract.

6. The question whether deceased had agreed to will plaintiff one half of her estate in return for the services sued for, is properly for the jury.

7. Ordinarily a legatee who has a valid claim may take under the will and also enforce his claim against the estate.

8. The legacies in this case are *held* to have been intended as payment for services rendered, and hence the legatee was not entitled both to the contract price of her services and the legacies.

9. The evidence is *held* to show that a diamond ring given claimant by deceased was intended as a gift and not in payment for claimant's services.


APPEALS from a judgment of the circuit court for Dodge county: MARTIN L. LUECK, Circuit Judge. *Modified and affirmed.*

Proceedings begun in the county court of Dodge county to collect a claim for personal services against the estate of Martha L. Sherman, deceased.

Claimant, a woman about seventy-two or seventy-three years of age in 1912, maintains that in the fall of that year she entered into a contract with the deceased, a widow, then eighty-seven or eighty-eight years old, to care for her the rest of her life in consideration of the deceased giving claimant one half of her personal estate, which at the time of her death amounted to $9,605.52. She entered upon her services December 24, 1912, and continued the same till January 14, 1917, when Mrs. Sherman died. The defendant claims that the agreement between the parties was that Mrs. Sherman should give claimant the use of her homestead for life, the use of a sufficient sum of money to maintain herself there,

and $1,000 in cash, and that such compensation should be made in Mrs. Sherman's will, and that it was in substance so made.    In her last will Mrs. Sherman gave claimant $200 in cash, the use of the homestead for life, and the use for life of the personal estate less about $7,300 in specific legacies, or the use of about $11,911.05, which with $615, admitted to have been paid claimant in the lifetime of Mrs. Sherman, and $300, the value of a diamond ring given her, besides providing for her funeral expenses, would amount to substantially what was agreed to be given her, according to defendant's contentions.

The jury found (1) that the reasonable value of claimant's services was $6,330 and (2) that it was agreed between claimant and the deceased that claimant was to receive one half of the personal estate left by deceased.    The trial court entered judgment in favor of claimant for the sum of $8,432.52, being $9,605.52, or one half the estate, less the sum of $615, admitted to have been paid claimant in the lifetime of deceased, of $300, the value of the diamond ring, and of $258, the stipulated value of the use of the homestead, on condition that she renounce her claim under the will.    Both parties appealed from the judgment.

For the plaintiff there was a brief by *Clark & Lueck* of Beaver Dam, and oral argument by *A. W. Lueck* and *Royal F. Clark*.

For the defendant there were briefs by *Chas. C. Miller* of Beaver Dam, *John J. Keefe* of St. Paul, Minnesota, and *James F. Malone* of Beaver Dam, and oral argument by *Mr. Malone* and *Mr. Keefe*.

Vinje, J.    Upon defendant's appeal it is contended that the court erred (a) in the admission of testimony; (b) in allowing an amendment to the complaint; (c) in refusing to submit questions requested by defendant; (d) that the verdict is not supported by the evidence; (e) that claimant's

taking under the will estops her from enforcing any claim; and (f) that judgment should be *in specie* and not in cash.

(a) The court over objection permitted claimant to testify that before she began her service with deceased her health was as near perfect as could be; that she rarely had any sickness, and was strong and able to do the work she was doing, but that at the time of Mrs. Sherman's death she considered herself not only a physical but mental wreck, and that she could not do the work she was doing before. The admission of such testimony was error. How it affected her health had no bearing upon the value of her services or upon what the agreement between the parties was, especially so since she described accurately and in detail what the nature and extent of her services were. But in view of the testimony and finding as to the value of such services, and especially in view of the fact that claimant recovers upon an express contract and not upon *quantum meruit,* we cannot say that the admission of such testimony was prejudicial error. It could not have affected the question of contract, or no contract, or of what the contract was.

(b) The original claim was for $8,000. After the evidence was in claimant moved to amend it by making it one half of the personal estate, or $9,605.52, and the motion was granted. This was to conform to the testimony in the case, the substance of which will be stated later. Both parties were somewhat in the dark as to what they could prove, and we perceive no abuse of discretion in allowing the amendment. Defendant made claim that the contract outlined in the statement of facts was entered into. Claimant by her evidence tended to show another contract. So the question of what the contract was, was litigated and became an issue by the evidence. An amendment to the complaint to conform to the evidence was therefore proper.

(c) Among the questions submitted by the defendant was the following: "Was it agreed between *Mary L. McNaugh-*

*ton* and Martha L. Sherman that compensation for the services rendered by said *Mary L. McNaughton* should be made by the last will of said Martha L. Sherman?" While this question does not embody the specific terms of the agreement claimed by defendant to have been made between the parties, it sufficiently called the trial court's attention to the matter of his claim, and it should have been submitted. Due exception to the court's refusal to submit it is recited in the bill of exceptions. A question embodying the contract as claimed by defendant as well as one embodying the contract claimed by the other side should have been included in the special verdict. Only by so doing would the claims of the respective parties be fairly and equally presented to the jury, and a verdict returned upon which a judgment could be entered no matter how the jury answered the questions. This is said on the assumption that, since both parties insisted a contract was made, the jury would find either for the contention of one party or the other as to what the contract was. In the instant case, if the jury had returned a negative answer to the last question submitted the verdict would have been incomplete, for neither party claimed the contract was to pay the reasonable value of the services.

But since the jury found the contract was as contended for by claimant, the question is, Was the failure to submit the alternative contract prejudicial error? No doubt it can be truly said that, since that question was not submitted, the jury might believe there was little or no merit in it, and were it not for the specific instructions given under the second question we would be inclined to the view that the court's refusal to give it was prejudicial error. But the court said:

"If you are satisfied to a reasonable certainty and by a preponderance of the evidence that the agreement referred to in the second question was entered into and made by and between *Mary L. McNaughton* and Mrs. Sherman, you will answer the question 'Yes,' and if you are not so satisfied your answer will be 'No.' "

Under such instructions an affirmative answer negatived any other contract. And it must be presumed the jury would not have answered the question "Yes" had they believed the contract was as claimed by the defendant. His claim for the existence of such a contract rested mainly upon admissions made by claimant in two letters introduced in evidence in which she spoke of an agreement in substance such as defendant claimed, supplemented by an admission to the like effect given upon the trial. On the other hand, the proof of the contract found by the jury rested upon the testimony of one Mr. Newton, who had been a lifelong friend of Mrs. Sherman, which was to the effect that sometime before claimant entered upon her service Mrs. Sherman told him that she had made an agreement with claimant to pay her one half of her estate for caring for her the rest of her life.

(d) Under the evidence supporting the claims of the respective parties briefly outlined above, it became a question of fact for the jury to determine which was true. Both claims rested upon admissions. It was for the jury to determine the probative force of each. There is nothing in the attendant facts or circumstances which would warrant this court in disturbing a finding made either way. Hence the conclusion reached by the jury cannot be disturbed.

(e) Ordinarily a legatee who has a valid claim may take under the will and also enforce his claim against the estate. 2 Woerner, Am. Law of Admin. (2d ed.) *975; *Farnham v. Barker,* 148 Mass. 204, 19 N. E. 371. Claimant in this case has sought to do both. Such conduct spells neither election nor estoppel, for there is nothing inconsistent or inequitable about it.

(f) The trial court properly reached the conclusion that one half of the personal estate of the deceased was the measure of the amount of money claimant was to receive for her services. It was not contemplated by the parties under the

contract made that the personal estate was to be divided *in specie* and one half thereof given to claimant.

Upon the claimant's appeal it is contended that the court erred in holding (1) that she could not take under the will and also enforce her claim, and (2) in deducting from the judgment $300, the value of the diamond ring given her.

(1) It seems to us that the trial court correctly concluded that it could not have been the intention or understanding of the parties that claimant was to receive one half of the personal estate and in addition thereto also take under the will. Mrs. Sherman was a very old woman at the time the contract was made and in the course of nature did not have long to live.    She had a fine home and kept two maids.    When she was seriously ill a nurse was called in.    Claimant's position was that of a companion more than that of a servant.    This was known and understood at the time the contract was entered into.    And while it is in evidence that Mrs. Sherman became quite deaf and was irritable, it must not be forgotten that claimant was given a fine home and enjoyed the comforts thereof.    The trial court held that deceased by her bequests in the will to claimant intended payment for services rendered.    This interpretation of the will, we think, is the proper one.    That being so, it follows that claimant cannot take both under the will and the contract, for that would be double payment for the same services.    2 Woerner, Am. Law of Admin. (2d ed.) *975.    The contract compensation is liberal payment for the services rendered, even if they were as arduous as she claims they were.

(2) We are unable to find any testimony that the diamond ring was given in pay for services.    It was given claimant by Mrs. Sherman in her lifetime and as a present from our understanding of the testimony.    The only evidence relating to the matter is this from the claimant given on her cross-examination: "I received a diamond ring that had been promised me for years, one of Mrs. Sherman's

rings." This, we construe, constituted a gift and not a payment, though claimant sold it later for $300.

*By the Court.*—Upon claimant's appeal the judgment is modified by adding thereto the sum of $300 as of the time of its rendition, and as so modified is affirmed, with one bill of costs to be taxed in her favor. The defendant will take nothing upon his appeal.